In the State Court of Appeals decision, there is a statement that this individual would be released in 2003. And are you aware whether he has or has not been released? I don't believe he has been released, Your Honor. Okay. I think the Court of Appeals was talking about what might happen assuming he pled or agreed to a voluntary manslaughter, a plea offer if one had been communicated to him, and what the potential terms would have been when he would have been released. Okay. It was a little confusing. Okay. Thank you. At the outset, of course, this is an AEDPA case, and the case is not covered by federal case law but by the case law of the United States Supreme Court. And the issue, at least as to the first threshold question about whether there is any basis for relief under federal habeas corpus, is whether there has been any basis, whether there exists any basis under established United States Supreme Court case law for relief where an attorney for a defendant is deficient in performance and fails to communicate a plea offer and the defendant goes to trial, has a fair trial, is convicted of a greater offense. Whether there is a basis for relief under the Strickland standard, that is to say whether there is prejudice. We believe that under established United States Supreme Court case law, under Lockhart v. Fretwell, there is no prejudice from a failure of a counsel to communicate a plea offer where the defendant has a fair trial and is convicted. The only basis for relief under Strickland, as applied by Lockhart v. Fretwell, as confirmed by additional U.S. Supreme Court law, Williams v. Taylor, is that unless there is a substantial procedural right to which the law entitles a defendant, the failure by counsel to do so. And there is no procedural right to have the offer communicated to him. There is an obligation on the part of the attorney to communicate a plea offer to his client. Yes. Which he had a right to enforce. Which he has. Now, the attorney has an obligation under professional norms to communicate a plea offer. When he fails to do that, he is acting deficiently. And there is no corollary right to get it on the part of the client? He has a right to get the plea offer, Your Honor, but he has no right to a plea offer. But that's a different issue, is it not? We're looking at the question of a failure to have communicated effectively and accurately the plea offer that was on the table. Correct, Your Honor. But there are two elements in the Strickland test. First is deficient performance. And the deficient performance is established by the failure of the attorney to communicate the plea offer. Now, the prejudice is not the failure to communicate the plea offer. That's the basis for the deficient performance. The prejudice goes to whether there has been a deprivation of a substantial procedural right to which the law entitles him. Well, assuming that he would have accepted the plea offer, you don't think there's any prejudice in the difference in the length of the sentence? He has no right to a plea offer, so there is no prejudice under law. You keep shifting. No, no, Your Honor. You said you were talking about prejudice. Correct. So I asked you whether there was any prejudice, and now you're back to there's no right. All right. Let's talk about the prejudice which you raised. You say there has to be prejudice. There has to be prejudice. All right. Is there not prejudice? There is no prejudice under United States Supreme Court precedent. Under Lockhart v. Freckwell, there is no prejudice. In receiving a longer sentence rather than a shorter sentence, that's not prejudice? There's no more prejudice in this case than there was in Lockhart when the attorney failed to make an objection which would have been sustained, where a reasonable attorney under the circumstances would have made the objection. And the answer is that the defendant had no right under law, procedurally or substantively, to an incorrect order by the court, and he has no right under any law to a plea offer. He would have no right to say, give me a plea offer. But if there's one on the table, which is the situation we're dealing with, does that not distinguish it from what you just said? No, Your Honor, it does not. Because we're not saying or arguing that the attorney was not deficient, that he failed in his duty to convey a plea offer. We're saying that under existing United States Supreme Court law, the absence of that offer, the failure by counsel, the deficiency by counsel under those circumstances does not deprive the defendant of a substantial or procedural right to which the law entitles him. Counsel, the argument that you're now making is not the one that the State Court of Appeal adopted. Correct, Your Honor. The State Court of Appeal said there's no showing of prejudice. We're not going to decide whether the plea offer was or was not communicated, because that was a disputed issue. They declined to reach that and said there's no showing that he would have taken it. The indications are that he had every opportunity to raise that issue with the court and didn't, and that he knew it at least through a relative at the time he appeared in court. I guess I'm not really sure I understand why we ought to or even should go through the analysis that you're now talking about when the question that we have to answer is whether the court of appeal was reasonable or unreasonable in its analysis, which is entirely different from what you've been talking about. No, Your Honor. The answer to your question is you're dealing with the result. And that's... Well, do you think that their analysis is appropriate or not appropriate? There are a number of analyses that the court could have come to. The question is was the result different from United States Supreme Court precedent. Well, that's not the question I asked, though. The question I asked is on its own terms, is what the court of appeal said reasonable or unreasonable in your view? We argue in our brief that it is not objectively unreasonable. There are three positions that we take. First, that there is no basis for relief under the AEDPA, because under Strickland and Lockhart v. Fretwell, there is no prejudice as a matter of constitutional law determined by the United States Supreme Court from a failure to communicate a plea offer, because under United States Supreme Court precedent, there is no right to a plea offer. So if he gets something that he has no right to, he is not prejudiced under the Lockhart standard. Second, the court of appeal addressed the issue on essentially as to whether there was a basis for prejudice, assuming that the attorney had failed to communicate the plea offer, which we don't dispute in this instance here. And the court reviewing the record found that even assuming the failure to communicate, there was no prejudice that the appellant or petitioner here had established for purposes of gaining relief. Now, the question is, was that objectively unreasonable in light of the record? And we say it was not objectively unreasonable. The third issue we raise, of course, is the nature of the relief afforded by the district court, which is specific performance and requiring. On that score, you know, federal courts also don't have the power to tell a state court, you must retry a defendant. The federal court doesn't order the court to do it. In the habeas situation, what happens is the federal court says, release the person unless you do this. So I suppose that in the same sense, the federal court can say, release the person unless you reinstate this offer. Sure. But it doesn't say unless, it says and. Well, but I guess we're the ones who decide whether that would be appropriate relief to do it in the way that I've just indicated. Well, the court has. We don't dispute. In fact, we are. We concede that the manner in which the form in which relief under federal habeas corpus takes its shape is by release conditioned on usually retrying the petition within 30 or 60 days or he's released. So it's a question of if that kind of condition is permissible. And, of course, habeas has gone a long way from the time when it simply meant release for just the reason you've indicated. You want to give the state system an opportunity to deal fairly rather than simply release the person. Why is this condition different substantively? Because it tells the state what plea offer to afford to present to a defendant, which the federal habeas corpus court has no authority to do. Second of all, right now, the only relief affordable under federal habeas corpus is release conditioned on whatever conditions the court wants to impose. The court, if the state court refuses to. And they release them. They release him, but then they can retry him, Your Honor. If he's got a problem with that, then he can pursue whatever remedies available to law. But you cannot at this point tell the state court what it can charge, what it can and what proceedings it can then undertake. This court has only one issue before it, whether the basis for relief supports release. If it does, it can it can order release and it can condition that release on other other behavior patterns by the state. But it cannot say release and charge or provide this particular plea offer. No case, no court of appeals case, no Supreme Court case has ever authorized that. This circuit did last year in a case called the United States against Simmons. I wrote it. I know it's under reconsideration now. Well, I'm sorry. Was that a case in which the attorney was incompetent or deficient in presenting a plea offer? No. It was? Anyway. Well, also, let me add one more thing. The court, federal courts do have supervisory jurisdiction over. Federal courts. Federal courts do. Federal courts do not have supervisory jurisdiction over state court. And I don't believe you'll ever find any case in which you'll find the federal court telling a state court what charges to place against the defendant. Unless the court has any other questions regarding any of the issues that we've talked about, I'll sit down. Thank you. Good morning, Your Honor. May it please the Court, Daniel Broderick, Assistant Federal Defender on behalf of Jeffrey Nunes. In response to Judge Graber's inquiry at the beginning, Mr. Nunes has not been paroled, and under the current posture, the California governor has no likelihood of ever being paroled based on his. I just found that part of the state's opinion, the State Court of Appeal opinion, confusing. I just wanted to clarify that. Under the current policy of the current California governor. Of some governors. With respect to the prejudice argument under Lockhart, Respondents' Counsel, I think, is misinterpreting Lockhart. Lockhart doesn't change Strickland. What Lockhart simply says is that there is no prejudice if the person was denied essentially an illegitimate right, or a right to which the prisoner has no entitlement. The prejudice in Lockhart, for example, was an objection was not made that the Supreme Court said by the time it came up to them was meritless. So the person was not prejudiced because they were not denied anything they were entitled, they were lawfully entitled to. In this case, as we put in our brief, that Respondents haven't even addressed, either today or in their reply brief, the prejudice that he suffered here was twofold. On the one hand, he has a right to make a knowing and intelligent and voluntary plea decision. He was denied that right because the plea was never explained to him by his counsel. And the second part of this, kind of the second prong of the same thing, is that he has a right, a Sixth Amendment right, to have the plea explained to him by a competent counsel. And he was denied that right. So he's been denied two rights. I agree with Your Honor. I wanted to ask you to address specifically the Court of Appeals' reasoning. Because the Court of Appeals seemed to, at least implicitly, to recognize everything that you're saying so far and say, well, let's assume that this was all wrong. And nonetheless, there's every indication, in their view, that he would not have taken the plea offer. They point specifically to the fact that he had done really well in three trials so far and may very well have consciously made the decision to go for it a fourth time and that he knew from his mother that there was a plea offer available to him and didn't raise it with the court when he had the opportunity. Now, under the AEDPA standard, we don't have to buy that 100%. All we have to decide is whether that's objectively unreasonable. And I'd like for you to address that. Right. And I think we walked through them in our brief, and I want to walk through some of them again. We've emphasized a few of them. And, in fact, that's really the issue is, was that decision an unreasonable application of the Strickland prejudice standard? And in this case, it really was. Because what Strickland says, first of all, is you have a right to effective assistance. Let me just answer by giving the facts that you think demonstrate that this was objectively unreasonable. First, may I ask you procedurally, was there a hearing in the district court here? In the federal district court, yes, there was an evidentiary hearing. And was there any hearing in the state court? No, there was not. Okay. Now, what are the facts that you believe show that the state court of appeals decision was objectively unreasonable? Just one little preface. There was a request, by the way, of Mr. Nunes' counsel for an evidentiary hearing in the state court, and that was denied. So he did make that request. First, it said I could actually go point by point, and I'm actually referring to pages 27 through, I believe, 29 of my brief. They said first he asserts that he was unable to raise this issue with his counsel before trial. They found that to be incredible or not credible. In fact, in the record before the state court of appeals were several transcripts that showed his counsel never showed up and was never there. When Your Honor said, for example, Judge Graber said that, in fact, didn't the court of appeals say that he was lucky or he had succeeded or whatever the phrase was? I apologize. In his prior cases, in fact, what happened was that in his prior case he was convicted of second-degree murder in the state court. And the only reason it was reversed is because he was convicted on the last trial of second-degree murder. And the only reason it got reversed was because his lawyer didn't show up. In the third trial. In his third trial. Okay. In his third trial, he was convicted. So he was convicted of second-degree, and the only reason it got reversed was because this same lawyer didn't show up at a reading of a jury instruction. And so it was reversed on a technicality. That's not exactly something like a prosecutor. It's not a technicality. I know. According to a very substantial rank. It is not a technicality. I apologize for having even suggested that. Your Honor, you're correct. It reversed. I think the magistrate referred to it as a procedural error. I think that's how it was referred. That it was reversed. But he's looking at a conviction. He's not looking at the ability to beat this. So that was just dead wrong by the state court of appeal. Just dead wrong. It's completely wrong. Also, the court of appeal said that he could have talked to his lawyer. In fact, after the one day this plea was opened, he didn't see his lawyer for 12 more days. That's how long it took before trial started. And that's the only time he saw his lawyer. So that was objectively unreasonable based upon the facts that they had. He said the court also said he could have brought it up with the court. That's another finding of the court of appeal, that he could have brought it up with the court. That's wrong on two counts. On the one count, there was nothing. In fact, it wasn't open any more than a day. There was nothing in the record to suggest that this plea offer was open any longer than the one day it was offered. In fact, it wasn't open any more than the five minutes it was out there on the table. And the court of appeals knew that because the next proceeding in court is trial. In the state court, what happened is they didn't even go back to court after the plea offer was made. Usually they go back and they put it on the record. That didn't happen here. So that's another unreasonable application by the state court of appeal. He didn't have that opportunity. But I think the biggest one, and really the one that goes right to the heart of the unreasonable application of Strickland, is what the court of appeal said he was supposed to do. What Strickland says is you have a right to the effective assistance of counsel. That's exactly what Strickland's about. And what the court of appeal said is, oh, forget that. Forget that. You have a rotten lawyer. You have a lawyer who's incompetent. You have a lawyer who doesn't do anything. So you, the defendant, the unlearned, uncounseled defendant, have to bring it up to court and say, wait a minute, Your Honor. I want you to get involved in this because my lawyer isn't telling me anything, isn't talking to me. That's totally not only improper, but that's terribly unreasonable. Application of what Strickland says. Strickland in no way says the burden or the onus is to be put on the defendant to suddenly take charge of his case when he's got a lawyer appointed. As the magistrate judge correctly found, that would not only be impossible, it's improper for him to talk when he's got a lawyer there. So that is probably the biggest one. If I had to pick the number one unreasonable application of it, it's their statement, their finding, that we find it. I understood Judge Graber to be interested more in their statement that he wouldn't have accepted it. OK. I'm not sure that is, but I certainly would like. What is the evidence that to you demonstrates that there was a reasonable probability he would have accepted the. I think this becomes a difficult one to answer because he wasn't allowed to in the state court to expand the record. So we have to kind of look at. We now have a record before. Oh, then that's fine. If I can talk about the reasons because the plea agreement that he was offered was that he would. He'd already been. Excuse me. In a prior case, he'd been convicted of assault. He'd been sentenced. That had been affirmed. So he'd already been serving his sentence on the assault conviction. What the plea offer was was just to the second degree and voluntary manslaughter and to the gun enhancement. So the plea offer was you plead to voluntary manslaughter, no gun enhancement. That's off the table. You don't have to worry about that. You will. You waive your sentencing credits on voluntary manslaughter so that you will serve an additional five and a half years on a voluntary manslaughter. That's essentially the plea offer. OK. The way it was explained to Mr. Nunez was, OK, you plead 11 years to voluntary manslaughter. You waive all the pre-sentence credits for everything. Assault, voluntary manslaughter, the whole shoot and match. So you have to start that clock ticking all over again. You get the gun enhancement. You add additional three years on the gun enhancement. So the plea offer as explained to Mr. Nunez was 22 years with no credit for what he's been serving in custody. And he'd been in custody for four or five years already. But he gets no credit for that on the assault either. So none of that was explained to him at all, period. So if you're giving him objectively, giving anybody, Mr. Nunez or otherwise, if you give him objection, excuse me, objectively the prospect of pleading guilty to voluntary manslaughter, serving five and a half years, and then he's out of custody, versus going to trial, getting convicted of second-degree murder, and spending the rest of your life in a life sentence. OK. That's what he had to weigh. That's the option. And I think when faith and knowing, keep in mind, knowing that at the last trial he'd been convicted of second-degree murder, then it's objective reason for anyone to have taken that. I don't know. I think 22 years is still better than life. I mean, I'm not sure that necessarily follows. You're saying that because what was explained to him wasn't as good as what the prosecutor apparently intended to be explained to him, that it's not likely that he would have taken it anyway. Well, here's what I think Your Honor raised the phrase. I don't want to revisit another case or another expression, but I think it really goes to the heart of the term self-serving. When we're looking at a defendant, in this case Mr. Nunes, when we're looking at Mr. Nunes, he says under penalty of perjury, I would have accepted the plea offer had it been correctly explained to me. OK. Now, is that self-serving? Of course it's self-serving. Is it evidence? Of course it's evidence. It's by far the best evidence we have of what he would have done. So we start with that. Is there any case in which a plea offer wasn't communicated where the defendant would not say that, even if there's other evidence that suggests it isn't so? Is there any case in which, well, I can't imagine coming into a published court opinion, because if he wouldn't say that, then there would be nothing, no dispute. So he'd have to say that, I would think, for it to reach. There may be cases that never get reported. They never get to be cases, but I'm not aware of any. But self-serving is really an anachronism from pre-code law, that pre-federal rules of evidence, pre-California evidence codes, self-serving was something that the common law didn't allow, but that was eliminated under new codes. So self-serving as an evidentiary barrier doesn't exist anymore. But the point is, but that doesn't make the evidence go away. The evidence of his statement that I would have accepted is there, and the question is, is that corroborated by anything? Well, the point is he's talking to, which we list in the brief again, he talks to his mother. His mother says, no, wait a minute. That's not the offer that your ex-wife is saying the prosecutor made. So he says, well, find out. Well, right there. If he'd have rejected it, why would he say that? That doesn't make any sense. I understood your brief, at least in part, to make a comparison of the risks and benefits and to say that nobody sensible would roll the dice under that circumstance because of the small spread that was represented by the potential for the outcome if he didn't accept. Right. That's correct, Your Honor. And I think the standard is really determined. I'm sorry. No, go ahead. Okay. I think the standard, really, what we're looking at is, is it reasonable, reasonably probable? It doesn't have to be for certain. Yeah. So is it reasonable? Reasonably probable or objectively probable that he would take it. And I think all of the factors we've listed in there say it is objectively probable that he would have taken it because. . . Well, Strickland uses the term reasonable probability that but for counsel's prior errors, the result would have been different. And so you're saying that's the standard. Right. Well, I also want to mention another thing that's very important in this case, extremely important in this case, is that this is not a case in which the defense was, I didn't do it. This is not a case in which the defense was, I want to walk away. His defense was voluntary manslaughter. That was his defense. So he's being asked to plead to something he's already saying he did. In fact, what was the date of the trial? I believe the trial was in, I want to say, 92 or 93. It was in 93, I think. He wrote the judge shortly before that. Three letters to the court, two of which he said, I'm willing to accept a plea to voluntary manslaughter. So we do have. . . He was interested in some kind of a plea. No question about it. He just had no chance with a lawyer here, and that's the problem. I think there's all sorts of objective factors that corroborate his decision that he would have accepted the plea, all of which were ignored by the court of appeal. They just flat out say, we don't want to look at those. We don't want to look at any of these. So it's not fair to say we don't think you've supported your position because the evidence that you've given us we don't want to look at. That's objectively unreasonable. Thank you, Judge. Judge Reinhard, you properly presented the issue. Would he have accepted the offer? That was the only issue addressed by the court of appeal. The court of appeal assumed that the attorney was deficient, that everything that should have been communicated to him was not. The question then that the court of appeal confronted was simply this. Would he have accepted that offer, that plea offer? And the answer was no. And we know that the defendant was defending himself based on a claim that it was voluntary manslaughter. He had already put in five years in custody, and the question then was what would be the benefit of taking the plea offer that was never communicated to him, which would have made him serve an extra five and a half years because the offer would be 11 years and he'd get day for day time credit. So he'd be serving five and a half years if he took that offer. On the other hand, if he went to trial and was convicted only of manslaughter, theoretically he could walk because he'd had five years before, and I believe in those days you got two-thirds credit. In other words, you get one day for every two days in pretrial detention. So arguably, theoretically, he could have walked if he had gotten convicted of voluntary manslaughter. So the question was to the court of appeal, based on the record presented, what is there for us to believe that he has met his burden of proving prejudice? And here the court of appeal said there isn't enough to establish for us prejudice, which, again, the defendant or the petitioner bore to prove. In that particular instance, he had nothing but a declaration saying, if I had known, I would have accepted the plea. We know from the ñ and the court can look to a petitioner's supplemental excerpts of record. It'll notice in the first eight to 20 pages, first 20 pages or so, at least three letters by the petitioner to the court before the trial expressing displeasure and expressing his ability and inclination to express his feelings very deeply, very clearly, and very strongly. So he was able to tell the court about any displeasure he felt. Now, at some point before the trial, he learned what the terms of the plea offer were, but felt that he couldn't ñ his attorney would not talk to him and he could not present that issue or get clarification from the court. And that is simply inconsistent with the record that the petitioner himself presents to you. If he can send letters, if he can file grievances with the ñ with the jail expressing his views, expressing his opinions, expressing all of the displeasure that he has, the uncertainties that he has with respect to the attorney who's representing him, why couldn't he have stood up before trial and asked the court to explain or to verify the offer of the plea? Counsel, how many times do you think defendants do that? And, you know, I sit normally wearing a different hat. How many times do you think defendants really do that in situations, even though they're unhappy with their counsel? Do you really think that that's the real world? Judge, I've been in the real world, too, and I've seen it, and sometimes I don't see it. But here we know that he does it. He did it. We know that he expressed his displeasure to the court many times. Do they jump up in the ñ in the situation in which they're about to go to trial and say, you know, I think this guy's been doing me dirt, and, Your Honor, I want some relief? It doesn't ñ it just doesn't work that way. You know, and the idea of placing that as a burden of law on a defendant is really troublesome. That's, you know, sort of like ñ you ever read Macbeth, you know, about when he finally wises up and says something like, damned be these paltering fiends that keep the word of promise to the ear and break it to the hope? I mean, is that really how the system works? No, Your Honor, it isn't. And the court of appeal didn't suggest that it should work that way. The court of appeal said, we don't have anything to support the declaration. We do know that he didn't say anything to the court. We do know that he didn't raise it. We do know he had the opportunity to do so. So based on that, shall we accept his declaration that he would have accepted this plea? When was it that he really got the understanding about this complex plea that his lawyer got wrong? Well, the issue is not how complex or how wrong the attorney got it. The attorney blew it. The attorney was guilty of deficient performance and failing to communicate the plea offer accurately and professionally. The question now is, if he had done so, would the defendant have accepted it? The court of appeal addressed that last question. And it said, based on his declaration and based on the fact that he never said anything to anybody to show any kind of question about whether he should take the plea or not, because the petitioner says he knew about the plea from his mother before the trial. Why didn't he do anything? We're not suggesting that he should have done something. We're asking what evidence is there to support his claim that he would have taken that plea. And we have a situation in which he hears about the plea, a plea that he wants, but says nothing to anybody. Now, what does that say to us in terms of evidence, support for his claim? For the court of appeal, it said something very strongly. And the question now before the court is the court's inference from that silence objectively unreasonable. When the court of appeal says all we have is a declaration here, well, all we have is a declaration that says I would have taken it, I knew about it before trial, and I said nothing to anybody. He testified at the evidentiary hearing in the district court, didn't he? The petitioner? He did. And was he cross-examined on that question about why didn't you stand up, when did you find out all the facts, what did you do? Was he cross-examined on that? He was cross-examined. And the magistrate heard all of that and believed him, right? That's what his findings affect. And the state court chose not to have an evidentiary hearing. The state court was not obligated to have an evidentiary hearing. Okay. I didn't say it was obligated. I said it chose not to have an evidentiary hearing. It chose not to for reasons that are valid under Federal constitutional law. It may be wonderful reasons. No, they're valid reasons. They may not be wonderful ones, but they are constitutionally valid reasons. Sure. I'm not suggesting they're not. I know you're not. All I'm saying is that the district court did hold a hearing. All the questions you raise are factual issues which were explored in the district court and were resolved by a magistrate. And we're reviewing his factual findings now. Your Honor, you're reviewing his factual findings, but you're also reviewing de novo the rulings of the state court of appeal. Yeah. The state court rulings, those are what's at issue here. And whether the court of appeal was objectively unreasonable in reaching its conclusion. Now, if it was objectively unreasonable in reaching its conclusion, then you can take a look at what the Federal magistrate determined to be the facts and make a determination based on that as to whether relief is available. But the first question this court has. Well, that's interesting. Objectively unreasonable. That would be right. I would think that if there is no evidentiary hearing in the state court and then there is an evidentiary hearing here, that we can look at those facts to determine whether the state court was objectively unreasonable. You suggest we can't consider those facts. I think you have. As far as I understand the AEDPA, Your Honor, you're looking at what was the ruling or the result of the state court process. And was that result contrary to or an unreasonable application of clearly established United States Supreme Court precedent? The point of having a factual hearing in the district court. Well, that's a good question, Your Honor. You don't think that AEDPA contemplates that? I thought there was language there about, you know, when you can examine the facts, if a state court has not, and when you can then hold hearings to determine the facts. There's nothing in that for the state court? There is a provision in the AEDP. I believe it's 2244E1, I think, or I forget the ‑‑ They must have intended that we make some use of those facts. It certainly allows you to have evidentiary hearings, but there are predicates for that permission, for that authorization. Okay. Well, thank you very much. Thank you, Your Honor. The case just argued will be submitted. The court will stand in recess for a brief period.
judges: Reinhardt, Graber, Shadur